IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LORI LYNN JEFFERIS, | } |
| Plaintiff, | } |
| v. | } CIVIL ACTION NO. H-03-0747 |
| HTI, Inc., d/b/a HOU-TRA INTERNATIONAL, | } |
| Defendant. | } |

## MEMORANDUM & OPINION ON ATTORNEY'S FEES

The Parties came before the court for hearing on October 14, 2005, regarding the sole remaining issue in the instant action, namely the proper sum of attorney's fees and costs to be awarded to counsel for the prevailing[1] Plaintiff in the instant action, Mr. David T. Lopez, Esq. (hereinafter "Mr. Lopez"). The issues were first presented in Plaintiff, Lori Lynn Jefferis' ("Jefferis") Motion for Entry of Judgment Including a Reasonable Attorney's Fee (Docket Instrument No. 98), Motion to Strike Defendant's Opposition to Plaintiff's Fee Application, or, Alternatively, to Compel Production of Documents (Doc. 104), and Supplemental Motion for Attorney's Fees (Doc. 113), and all other supplemental responses to, motions in opposition to, and memoranda in support of such motions filed by Defendant, HTI, Inc., d/b/a Hou-Tra Int'l ("HouTra"). At the hearing, parties presented testimonial and documentary evidence, and the court takes particular note of Mr. Lopez's Second Supplemental Application for Award of Attorney's Fees and Supplement to the Bill of Costs (Doc. 121), filed October 14, 2005, and the newly filed transcript of of the deposition of Mr. Gerald M. Birnberg, Mr. Lopez's retained expert on the issue of attorney's fees.

---

[1] The court considers Jefferis the "prevailing party" in the instant action. Under the Supreme Court's "generous formulation" of the term, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). As further detailed *infra*, Jefferis has obtained dome relief against HouTra and as such, a material alteration of the legal relationship of the parties has occurred, entitling her to be considered the "prevailing party." *See Farrar*, 506 U.S. at 111.

**I.**            **Factual Procedural Background & Argument**

Mr. Lopez initially requested a lodestar fee of $195,615.00 (for 558.9 hours at a rate of $350.00 per hour), which he suggested be upwardly adjusted by 15% to allow for delay in payment and to bring fees closer to the rates in the community, resulting in a fee of $224,957.25. (Doc. 98, p. 8.) Lopez also requested $9,108.35 as costs. These costs included court reporter, witness fee, exemplication fees, and an itemization of "other" costs including WestLaw access charges ($2,980.84), delivery services ($248.00), travel ($141.20), a Dun & Bradstreet Report ($150.00), and a mediation fee ($1,600.00). (Doc. 98, "Itemization of Other Costs," Tab 3.) In addition to stenographic depositions of Plaintiff's witnesses, Mr. Lopez also itemized the cost of contemporaneous video deposition services provided for witnesses Dr. Shirley J. Neeley ($300.50), Al Connelly ($346.50), Albert Mireles ($379.00).

As of May 2, 2005, in a Supplemental Application for Award of Attorney's Fees and Costs (Doc. 113), Mr. Lopez had provided the court with documents regarding additional time he spent litigating the attorney's fee issue, now amounting to $217,455.00 (621.3 hours at a rate of $350.00) with a similar 15% upward adjustment or enhancement, bringing the total of his fees to $250,037.25 as of that date. Mr. Lopez also amended his requests for costs, now seeking $12,117.75.

In his most recent, or Second Supplemental Application for Award of Attorney's Fees and Supplement to the Bill of Costs, filed October 14, 2005 (Doc. 121), Mr. Lopez updated his time itemization, requesting attorney's fees in the amount of $263,677.75, arrived at by computing a lodestar of $229,285.00 (now 655.1 hours expended multiplied by an hourly rate of $350.00), and upwardly adjusting by 15% "for delay of payment." Also attached to this Second Supplemental Application were invoices for the stenographic ($612.50) and video ($278.00) deposition of Gerald M. Birnberg, Plaintiff's expert on attorney's fees, which in addition to prior cost amounts yielded an newly asserted amended total of costs for $13,008.25.

HouTra has argued that a plaintiff who achieves only limited success should be awarded only an amount of fees that is in reasonable relation to the results obtained. (Doc. 102, p. 3.) HouTra asserts that Jefferis was not the prevailing party on most of her claims, as she requested a litany of remedies in her Original Complaint, virtually all of which were disallowed by the trier of fact or were abandoned. The remedies Jefferis initially sought included (1) an order

of reinstatement; (2) an injunctive order requiring that plaintiff's reinstatement be with credited service to her date of hire combined with an anti-retaliation provision; (3) an award of all lost pay and benefits; (4) damages for injury to plaintiff's person, reputation, and enjoyment of life; (5) punitive damages; and (6) an order requiring the posting of certain notices regarding a prohibition on discrimination at Defendant's job sites.  (Doc. 1, pp. 7-8.)

HouTra further argues that in Jefferis' Responses to Defendant's Interrogatories, Jefferis claimed she was entitled to back pay, front pay for at least three years, the value of employment benefits, costs of medical services and medications, loss of earning capacity, and damages for humiliation, emotional distress and loss of enjoyment of life.  (Doc. 102, p. 3 (*citing* Ex. 1, pp. 3-4.))  Because Jefferis earned approximately $60,000.00 per year, according to HouTra, her back pay award would have been approximately $140,000.00 and the front pay award would have been an additional $180,000.00.  Finally, Jefferis claimed in conclusion that she should be entitled to "no less than $300,000.00 in compensatory and punitive damages."  (*Id*. at p. 3 (*citing* Exh. 1, p. 4.))  In short, argues HouTra, Jefferis requested over $500,000.00 in economic, compensatory and punitive damages.

In the Joint Pretrial Order, Jefferis stated she had been unable to find comparable employment and had been damaged by loss of pay and benefits, severe emotional distress, damage to her professional reputation, and loss of enjoyment of life, and she sought punitive damages for HouTra's willful or reckless conduct as well.  (Doc. 59, p. 2.)  In the court's charge to the jury, the parties had stipulated to a charge on damages which described the means by which the jury could award compensatory damages for the injuries suffered by Jefferis, including back pay with wages and employee benefits, damages for past emotional pain and mental anguish and future emotional pain and mental anguish, past damage to reputation, future damage to reputation, diminished earning capacity, past loss of the enjoyment of life, future loss of the enjoyment of life, and punitive damages.  (Doc. 94, pp. 7-9.)

At final oral argument, Mr. Lopez argued to the jury that lost pay and benefits amounted to $137,994.50 (Doc. 112, Trial Transcript, 4-44:20); that loss of professional reputation was equal to three years of base pay, or about $115,000 (*Id*. at 4-45:7-8); that although emotional distress in the past and future and loss of enjoyment of life were left to the jury's "perspective" or discretion, factoring Jefferis' medical costs and her aversion to her favorite activities made this

sum not "insubstantial" (*Id.* at 4-45:9-25); and, that in calculating punitive damages, the jury could take into account HouTra's $46 million earnings annually in sales and its $6 million net worth. (*Id.* at 4-58:10-19.)

At the end of trial, as mentioned previously, while the jury found that Jefferis was subjected to sexual harassment (Doc. 90, p. 2), the jury did *not* find that the sexual harassment culminated in Jefferis' discharge. (Doc. 90, p. 3.) The jury also did *not* find that Jefferis was discharged on the basis of sex. (Doc. 90, p. 5.) Furthermore, the jury awarded only the following amounts as recovery for damages resulting from Jefferis' sexual harassment.

| | |
|---|---|
| Lost pay and benefits: | 0 |
| Loss of professional reputation: | 9,000 |
| Emotional distress in the past: | 50,000 |
| Emotional distress in the future: | 0 |
| Loss of the enjoyment of life: | 10,000 |

(Doc. 90, p. 6.)

Although this figure totals $69,000.00, in its Final Judgment, the court awarded $82,354.41, a figure inclusive of prejudgment interest. (Doc. 116.) Hence, Jefferis' recovery, even with added interest, amounted to less than one third of the amount of fees requested herein by Mr. Lopez her attorney.

**II.     Analysis**

   **A.     Attorney's Fees**

Under Title VII, the court "may allow the prevailing party, other than the Commissioner or the United States, a reasonable attorney's fee (including expert fees) as part of the costs...." 42 U.S.C. §2000e-5(k). "The determination of a reasonable attorney's fee is left to the sound discretion of the trial judge." *Ranger Ins. Co. v. Algie*, 482 F.2d 861, 864 (5th Cir. 1973)(collecting cases). A prevailing party may recover only those fees that are reasonably expended on the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). The calculation of attorney's fees involves a well established two-step process. First, the court calculates a "lodestar" by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (*citing Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1994)). The "district court is not only required to determine whether the total hours claimed are reasonable,

but also whether particular hours claimed were reasonably expended." *Kellstrom*, 50 F.3d at 325 (*quoting Alberti v. Klevenhagen*, 896 F.2d 927, 932 (5th Cir. 1990). "To determine reasonable rates, a court considers the attorneys' regular rates as well as prevailing rates." *Id*. at 328. This determination is reviewed for abuse of discretion. *Id.* at 329.

In the second step, the court then considers whether the lodestar should be adjusted either upward or downward depending upon the circumstances of the case. *Migis*, 135 F.3d at 1047. In making this secondary adjustment, the Fifth Circuit Court of Appeals requires that an award of attorney's fees be supported by the "*Johnson* factors" for the award to be reasonable, i.e., the twelve factors elaborated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[2] The Court of Appeals subsequently clarified that the *Johnson* factors should be considered in the following framework:

> (1) Ascertain the nature and extent of the services supplied by the attorney;
> (2) Value the services according to the customary fee and quality of the legal work; and
> (3) Adjust the compensation on the basis of the other Johnson factors that may be of significance in the particular case. *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 552 (5th Cir. 1987) (citing *Nisby v. Commissioner Court of Jefferson County*, 788 F.2d 134, 136 (5th Cir. 1986), *clarified by, Cobb v. Miller*, 818 F.2d 1227 (5th Cir. 1987)).

In applying this framework, the court must explain the findings and the reasons upon which the award is based. *Curtis*, 822 F.2d at 552 (*citing Cobb*, 818 F.2d at 1231)). However, "[t]he lodestar may be adjusted according to a *Johnson* factor only if that factor is not already taken into account by the lodestar." *Transamerican Natural Gas Corp. v. Zapata P'ship., Ltd. (In re Fender)*, 12 F.3d 480, 487 (5th Cir. 1994).

In *Hensley v. Eckerhart*, the Supreme Court acknowledged that the eighth *Johnson* factor, "the amount involved and the results obtained," indicated that the level of a plaintiff's success is relevant to the amount of the fees involved. *Hensley v. Eckerhart*, 461 U.S. at 430. One corollary of this principle is that a party is not entitled to attorney's fees for the prosecution of an unsuccessful claim unless it involves common facts or derives from related legal theories of another claim that is successfully prosecuted. *See id.* at 434. In the instant action, the court finds

---

[2] The twelve *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, (12) awards in similar cases. *Johnson*, 488 F.2d at 717-719.

that Jefferis' claims were interrelated or arose from a common factual core, such that although she did not prevail on her claim for discriminatory discharge, the court will not parse her attorney's time based upon her separate claims. Nevertheless,

> If... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate *may* be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.... Again, the most critical factor is the degree of success obtained. *Id*. at 436 (emphasis added).

Based upon *Hensley* and later Fifth Circuit precedent, the court finds that "the degree of success obtained" has a strong and relevant impact on the instant case, which impact the court will describe in detail.

### 1.     Calculation of a Lodestar

Counsel for Jefferis, Mr. Lopez, had the burden of establishing the reasonableness of his claimed attorney's fees. *Kellstrom*, 50 F.3d at 324 (*citing Hensley v. Eckerhart*, 461 U.S. at 437). In *Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984), the Court placed the burden of proving reasonable rates upon the attorneys.

> In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to--for convenience--as the prevailing market rate.

In *Islamic Center of Mississippi v. City of Starkville, Miss.*, 876 F.2d 465, 469 (5th Cir. 1989), the court commented upon *Blum*, and stated that

> when an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is *prima facie* reasonable.

The court finds that it accepts Mr. Lopez's request for his billing rate per hour of $350.00 as a sum reflecting the general prevailing rate for one with Mr. Lopez's experience; however, the court notes that even this rate could theoretically be reduced for the reasons that follow.

Second, the burden of proving reasonably expended hours could be met "only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement." *Bode v. U.S.*, 919 F.2d 1044, 1047 (5th Cir. 1990). Counsel is typically

required to produce contemporaneous billing records, and Mr. Lopez has provided documents he proposes fulfills this need for the court. (*See* Doc. 98, Tab. 1; Doc. 113, Supplemental Itemization of Time; Doc. 121, Second Supplemental Application Itemization of Time filed at hearing on October 14, 2005.) However, when reviewing whether the hours spent are reasonably expended, the court may reduce attorney's fees in its discretion, if it takes issue with any portion of them. *See Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990).

The Court in *Kellstrom* noted that case law "has not precisely defined the appropriate standard, if in fact, it is susceptible of being thus defined," and that a district court's finding that time records are "'not illuminating as to the subject matter' "or 'vague as to precisely what was done' gives the district court sufficient leeway within which to *accept or reject* fee applications." *Kellstrom*, 50 F.3d at 326-27 (emphasis in original). The Court in *Kellstrom* also stated that terms such as "revise memorandum," "review pleadings," "review documents," and "correspondence," terms identical to the types of terms used by Mr. Lopez, bordered on the inadequate as a matter of law, even taking into account that the obvious practical considerations of daily practice precluded "writing a book" to describe professional services in "excruciating detail." *Id*. at 327. The Court warned that "attorneys who anticipate applying for reimbursement of fees should endeavor to be less terse." *Id*. Otherwise, "[w]hen a prevailing party submits a fee application without proper documentation, the court has the discretion to reduce the award to a reasonable amount." *No Barriers, Inc., v. Brinker Chili's Texas, Inc.*, 262 F.3d 496, 500 (5th Cir. 2001)(*citing Von Clark*, 916 F.2d at 259); *See also Hensley*, 461 U.S. at 433; *Kellstrom*, 50 F.3d at 325-26; *Alberti*, 896 F.2d at 931; *Leroy v. City of Houston*, 831 F.2d 576, 586 n.16. (5th Cir. 1987).

The court notes that Mr. Lopez has not exercised appropriate billing judgment with respect to the amount of time or total hours which he has billed in the course of the prosecution of this action. In particular, the court finds that many of his billing descriptions are either vague or show on their face that the time spent on such matters was inappropriate. Mr. Lopez engaged in numerous meetings with his staff (termed "staff conferences"), meetings with his client, communicating or reviewing correspondence from opposing counsel or communicating with

officers of the court, with insufficient description of what specifically occurred or was the subject, substance, or topic of the discussions at these junctures. Frequent entries such as "staff conference re client inquiry on scheduling" is not illuminating either as to subject or content.

      At the hearing on attorney's fees, Mr. Lopez admitted that conferences with staff would often include nothing more than a staff member receiving a telephone call from opposing counsel or the court, that staff member communicating the substance of the call to Mr. Lopez, and Mr. Lopez telling the staff member what he intended to do and what message he intended to return; this is certainly a roundabout way of getting and making a telephone call. The court, of course, does not presume that "staff" time included only telephone calls, but such time apparently included other instructions. Mr. Lopez stated at the hearing on attorney's fees that such "staff" time comprised no more than 20 hours of his time. In the court's extensive analysis of all entries including the word "staff," approximately forty (40) hours to be generous, or approximately 42.3 hours to be exact, were spent on staff related matters. In addition, the court found approximately six (6) hours spent on entries involving "scheduling," and approximately five (5) hours of time in various indeterminate activities: briefing cases without describing their import, conferencing with the client without describing the content or subject, forwarding emails to the client regarding "similar cases," reviewing "articles," investigating the taxation of attorney's fees, and calling the case manager of another judge. Mr. Lopez also spent approximately 1.8 hours reviewing or calling regarding a "docket control order" in a little over a week's time. Though the records do seem to improve in detail somewhat around the time of trial, the court cannot overemphasize that all of Mr. Lopez's time entries in general are extremely vague when it comes to detailing the subject matter or the details of what was done; the court understands that excruciating detail is not required, but nevertheless the impression of these time records is not positive for the following reason: as a solo practitioner, or essentially as the sole "partner" of his own firm, Mr. Lopez has billed for activities that could have been performed by an associate or paralegal, yet he has billed all such time at the rate suitable for one with his experience on complex tasks. As pointed out by Mr. Gerald M.

Birnberg ("Mr. Birnberg"), Mr. Lopez's expert on fees, this situation may be inevitable for a solo practitioner who must get involved in menial tasks; however, even Mr. Birnberg agreed that clerical time should not be involved in an application, and that if clerical charges consumed a preponderant amount of time, that time should be reduced. (Deposition Transcript of Gerald M. Birnberg, filed at hearing on October 14, 2005, pp. 27:16-29:17.) Mr. Birnberg also admitted that the court was, "admittedly and unquestionably, in a better position to make [the] ultimate determination" as to whether time expended by Mr. Lopez was "reasonable." (*Id*. at pp. 21:12-15; 22:10-18.) Mr. Birnberg also admitted that although he may have reviewed the time entries at the time of his first report, he had not reviewed the specific entries in preparation for his deposition, nor did he believe such a review was proper under the law. (*Id*. at pp. 22:5-18; 24:24 through 25:9; 25:18-25.) When pressed, however, even Mr. Birnberg agreed that certain specific time figures could be cut if they were inappropriate, admitted that cutting fractions of time was inappropriate in his "opinion," and provided no general methodology, other than relying on the aforementioned expertise of this court, for how a reduction should be made. (*Id*. at pp. 26:1-11; pp. 29:15-17.) The court has in fact looked at hours in detail, and though these hours have informed its analysis, the court has not engaged in any direct "hours cutting."

Finally, the length of this case, and the time billed, was also increased, in the court's opinion, by unnecessary conflicts over discovery and time extensions. For example, on March 15, 2004, Mr. Lopez opposed HouTra's request for a continuance and wished to proceed to trial "at the earliest practicable date." (Doc. 30, p. 1.) When a delay and continuance was inevitable and trial had been reset to September (Doc. 32), on May 6, 2004, Mr. Lopez sought by motion request to take the depositions of Al Connelly and Dr. Shirley J. Neeley beyond the discovery deadline and stated that these depositions were "essential to plaintiff's case at trial." (Doc. 34, p. 1.) In situations such as these, when the depositions were "essential" to Plaintiff's case presumably *ab initio* for purposes of making a complete record, why was there even any time expended initially in opposing the continuance which thereafter *allowed* for such depositions to

be taken and strengthened Plaintiff's case? The court is not criticizing zealous representation, and to the degree the court is itself responsible for delays, it apologizes, but the court appreciates a complete record, not discovery strategies which rob the court of its own time.

Therefore, due to the extreme paucity of descriptive qualifications from the time entries presented, and from the court's observance of the entire history of these proceedings, the court is left with a distinct impression that Mr. Lopez's records should or could have been properly edited, as otherwise they run the risk of seeming excessive and unclear. Time not reasonably billed to one's client should not be billed to one's adversary, and a reasonable client would have questions about such time entries and would seek clarification. Mr. Lopez's asserted time of 655.1 hours, as of October 14, 2005, is simply too large an amount of time for someone of Mr. Lopez's expertise in trying over 300 employment discrimination cases (Doc. 98, Declaration of David T. Lopez, Tab. 2, p. 1.) Mr. Lopez averred that the fact that Ms. Jefferis is a lesbian seeking recovery for sex discrimination and harassment on the basis of sex may have made the issues more novel, but not more difficult. At the hearing on attorney's fees, counsel for HouTra suggested that perhaps Mr. Lopez's time, or some of it, should be multiplied by a lower hourly rate to account for some of the unreasonable amount of time Mr. Lopez spent with staff or on scheduling matters and such, and the court agrees that this could be possibility, but the time records as a whole are indeterminate, and hence the court will rather reduce them in toto while retaining Mr. Lopez's hourly rate, a reasonable rate according to Mr. Birnberg.

If the court were to cut Mr. Lopez's fee award request down to one third of his requested amount to take account of his indeterminate billings and also his less-than-satisfactory recovery obtained in this action under the eighth *Johnson* factor, as discussed below, the resulting figure would be $76,428.33. This seems reasonable to the court in light of the *Johnson* factors and the fee arrangement which Mr. Lopez had with his client.

At the hearing on attorney's fees, it was suggested by counsel for HouTra that Mr.

Lopez's recovery equal the fee he charged his client.  In determining a "reasonable" fee, the court does not have to make reference to the fee agreement relationship between attorney and his client, as such is not part of the analysis; the court's aim is to determine a reasonable fee independently of counsel's fee arrangements.  However, *parts* of such a fee arrangement or relationship may be relevant when the court has no other information with which to proceed, and because in this case, the analysis actually supports the court's two-thirds (2/3) deduction from the proposed fees.

Mr. Lopez states in a Declaration that his fee arrangement with Jefferis was for the payment of an initial $16,000.00 flat fee for an attempt at informal resolution, and an additional subsequent flat fee of $34,000.00 for filing and prosecution of the lawsuit, and the plaintiff was entitled to a reimbursement of such sums from the fee award made by the court.  (Doc. 98, p. 2.)  At the hearing held on the attorney's fees, a letter agreement between Jefferis and Mr. Lopez dated February 28, 2003, was introduced into evidence.  It described the terms of his retention and his fees and explained his rates.  Such letter stated

> If the case is settled without trial, our fee will be 40% of the gross amount of the monetary settlement obtained, from which you will be reimbursed up to the $34,000 you will have paid for our services in the lawsuit.  (Plaintiff's Hearing Exh. 2.)

In an earlier letter agreement which had commenced Mr. Lopez's representation of Jefferis, Mr. Lopez had described the $16,000.00 flat fee he charged for attempting to resolve the case without filing the lawsuit and stated

> If in attempting to resolve this matter we are successful in obtaining a monetary settlement, my firm will be entitled to 33-1/3 per cent of the amount.  In the event of a monetary settlement, the $16,000.00 retainer that you will have paid will be deducted from the percentage due my firm.  (Plaintiff's Hearing Exh. 1.)

Furthermore, Mr. Lopez admitted at the hearing that he was in fact paid the full $50,000.00 agreed flat fee for his retention by February or March of 2003, and has not experienced any delay in payment with respect to this sum. Opposing counsel made a strong argument, with which the court agrees, that this factor undercuts Mr. Lopez's belief that he is entitled to a 15% increase in his fee for late payment, and the court will not award such an increase.  To the degree this increase is also

requested for purposes of exceptional success, the court denies such an increase and the court discusses this issue below.

The court notes that a forty percent[3] recovery on Jefferis' eventual jury award of $69,000.00, yields an attorney fee amount of $27,600.00. If the court adds this percentage based upon the award obtained back onto the $50,000.00 fee charged to his client for prosecution of the case, which fee Mr. Lopez would retain unless he recovered this amount pursuant to the agreement, the resulting monetary award, $77,600.00 would be equal to roughly one-third of the total attorneys' fee award Mr. Lopez is seeking, i.e., almost the same figure resulting from the two-thirds (2/3) deduction the court is making for incomplete and inappropriate time records ($76,428.33) as discussed above.[4] A total of $76,428.33 would account for roughly 218 hours of attorney time based upon Mr. Lopez's hourly rate of $350 per hour. This hourly figure is appropriate in light of Mr. Lopez's experience on such cases. In the court's estimation, Mr. Lopez spent approximately 100 or 120 hours in trial related activity, including both his attendance and his preparation and post-trial work, which would amount to $35,000.00 or $42,000.00, respectively. To the degree the initial $50,000.00 figure does not cover this cost, the additional $26,428.33 would do so. Accordingly, the court awards $76,428.33 as the attorney's fee to Mr. Lopez, and this is also supported by the analysis of the *Johnson* factors below to the degree the court has not mentioned them yet, but particularly, *Johnson* factor number eight.

### 2.    The Johnson Factors

In conducting the *Johnson* factor analysis, the court must explain how each of the *Johnson* factors affects its award.[5]  *Longden v. Sunderman*, 979 F.2d 1095, 1100 (5th Cir.1992).

---

[3]The court takes the higher percentage Mr. Lopez himself utilized in his letter agreement.

[4]The court is not crafting an award that is proportionate to the amount of damages recovered. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). The court has looked to whether an analysis of the agreed relationship between Mr. Lopez and his client provide alternative support for the award it is making.

[5]**1.    The Time and Labor Required**
This factor historically required the judge to weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. *Johnson*, 488 F.2d at 717. This factor also required the court

> to distinguish between legal work in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. *Id*.

However, this factor is already now reflected in the "lodestar" as described above.

### 2. The Novelty and Difficulty of the Questions

This factor originally attempted to reward an attorney for accepting the "challenge" for undertaking a case which could potentially make new law. *Johnson*, 488 F.2d at 718. Today, the novelty and difficulty of the issues are considered already reflected in the lodestar. *Shipes*, 987 F.2d at 320.

### 3. The Skill Required to Perform the Legal Service Properly

This factor was dependent upon the trail judge's close observation of the attorney's work product, his preparation, and general ability before the court. *Johnson*, 488 F.2d at 718. The court notes that this factor is reflected in a lodestar amount. *Shipes*, 987 F.2d at 320.

### 4. The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case

With respect to this factor, courts originally intended to account for time consuming conflicts in representation; however, in this case "counsel has not demonstrated how this reduction of employment in other cases is any greater than would normally be expected from expending time in pursuit of any other litigation…" *In re Catfish Antitrust Litigation*, 939 F. Supp. 439, 502 (N.D. Miss. 1996).

### 5. The Customary Fee

This factor asked the court to consider the customary fee for legal work in the community, acknowledging that various types of legal work commanded differing scales of compensation. *Johnson*, 488 F.2d at 718. This figure is now presumably reflected in the lodestar's accounting for the prevailing rate.

### 6. Whether the Fee is Fixed or Contingent

This factor has been the subject of a precedential struggle. Even initially the Court of Appeals admitted that "such arrangements should not determine the court's decision...[t]he criterion [being] not [to] what the parties agreed but what is reasonable." *Johnson*, 488 F.2d at 718 (*citing Clark v. American Marine Corp.*, 320 F. Supp. 709, 711 (E.D. La. 1970)). In *City of Burlington v. Dague*, the Supreme Court held that enhancements for contingency were not permitted under fee-shifting statutes. *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992). This was recognized by the Fifth Circuit Court of Appeals. *Shipes*, 987 F.2d at 322-323.

### 7. Time Limitations Imposed by the Client or Circumstances

This factor was initially conceived to take into account "priority work," which delayed a lawyer's other work when he was called onto a case "at a late stage." *Johnson*, 488 F.2d at 718. To the extent this factor is not part of any lodestar award, it has not been argued as an influential factor before this court.

### 8. The Amount Involved and the Results Obtained

This factor is analyzed in depth through the course of this opinion.

### 9. The Experience, Reputation, and Ability of the Attorneys

This factor is now typically treated as subsumed within the lodestar analysis. *Transamerican*, 12 F.3d at 488. The court will note however that experience and ability are qualities which aid attorneys the most when these qualities allow such attorneys to obtain positive results expeditiously and efficiently. This is why courts most often consider expenditure of hours, billable rates, skill, experience, and ability to be interlinked in a reasonable "lodestar." Merely because Mr. Lopez is well-regarded and experienced however does not on its own warrant an increase in his attorney's fee; the court notes that as stated above, Mr. Lopez would presumably have achieved more efficient results with less expenditure of time as a result of his experience.

### 10. The "Undesirability" of the Case

The Court in *Johnson* viewed this factor with respect to Civil Rights attorneys who faced hardships in their communities because of their work. *Johnson*, 488 F.2d at 719. However, the court does not believe that this factor warrants an increase in the award in this particular case, as there is no evidence produced by Mr. Lopez that he did face the same pressures as the attorneys described in *Johnson*, and the court is unaware that Mr. Lopez's reputation has been hindered by his 'taking on' such cases. This factor either does not pertain to this case, does not suggest any modification to the lodestar, or is already accounted for in the lodestar.

### 11. The Nature and Length of the Professional Relationship with the Client

Argument has not been presented that this factor would or should modify the award of attorney's fees in this action.

A detailed analysis under each *Johnson* factor is not required as long as the *Johnson* framework is used and the court's reasons are set forth clearly. *Strong v. BellSouth Telecoms.*, 137 F.3d 844, 851 (5th Cir. 1998). Furthermore, "the district court may adjust the lodestar up or down in accordance for relevant *Johnson* factors *not already included in the lodestar.*" *Shipes v. Trinitiy Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). "The district court must be careful not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments." *Id*. (citing *Von Clark*, 916 F.2d at 258). The novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation "are presumably fully reflected in the lodestar amount, and thus cannot both serve as independent bases for increasing the basic fee award."*Id*. (citing *Alberti*, 896 F.2d at 930); *See also Transamerican*, 12 F.3d at 488 (noting that the factors already accounted for in the lodestar amount are 2, 3, 8, and 9). Finally, "[a]lthough upward adjustments of the lodestar figure based on these factors are still permissible, such modifications are proper only in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings by the lower court." *Id*. The court does not find such an upward adjustment warranted in this case.

As stated previously in the court's discussion of *Hensley*, the degree of success obtained is the most critical factor for the court. Overall, having reviewed the relief Jefferis initially sought with the amount of her eventual recovery, discussed *supra*, the court must find that this case was not a resounding, extraordinary success, but was at most a partial success and even so, as to only one half of the entire case, albeit a factually interrelated half. The court's opinion, and its finding of a disparity between the extent of the success and the amount of the fee award requested does not yield an easy, proportionate analysis. In fact, the Supreme Court has rejected "the proposition that fee awards...should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside v. Rivera*, 477 U.S. at 574. Though a district court must consider the results obtained, and though it is not "*required*" to reduce a fee award request, although it must explain its reasoning when doing so, it is certainly "appropriate" and within the court's discretion to make such a reduction. *See Kellstrom*, 50 F.3d at 330.

---

**12.   Awards in Similar Cases**
The court in *Johnson*, stated the "reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit." *Id*. at 719.

Answering the question of what is reasonable in light of the level of success is not an easy task, but, "a reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of litigation as a whole." *Hensley*, 461 U.S. at 439-40.

In *Migis*, the Court of Appeals decried an attorney's fee award that was six and one-half times the amount of damages awarded, and pointed out that Migis had sought over twenty-six times the damages actually awarded. *Migis*, 135 F.3d at 1048. In the instant action, the attorney's fee award requested is approximately three times the amount recovered for Jefferis, and Jefferis initially sought an award several times greater than that one she has received. Having reviewed all the precedent the court was capable of reviewing, the court has concluded that reducing Mr. Lopez's request by approximately two-thirds, adequately takes into account both the limited recovery and the state of the billing records. The court therefore awards $76,428.33 for the reasons stated.

**B.     Costs**

Costs allowed pursuant to 28 U.S.C. § 1920 allows a judge or clerk of court to tax costs including fees of the clerk and marshal, fees of the court reporter for all or any part of the transcript obtained for use in the case, fees for printing and witnesses, and fees for expemplification and copies of papers for use in the case. Reasonable attorney's fees may also include reasonable out-of-pocket expenses, postage, photocopying, paralegal services, long distance telephone charges, and travel costs. The court allows Mr. Lopez to recover such costs. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-445 (1987). The court agrees that it will disallow the cost of a videotaped deposition where the deposition was otherwise stenographically transcribed. *Migis*, 135 F.3d at 1049; *See also Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 529-30 (5th Cir. 2001). The court will also *not* award Mr. Lopez's $1,600.00 costs for mediation. *Mota*, 261 F.3d at 530. The court finds that costs for computer assisted research are recoverable. All other costs, except for those declined above, are recoverable. This figure, up to October 14, 2005, including the stenographic transcript of the Birnberg deposition, though not its video, is achieved by taking the total costs submitted, $13,008.25, and subtracting the relevant amounts for video depositions ($278.00, $379.00, $346.50, $300.50) and the mediation costs ($1,600.00), yielding a total of $10,104.25. This amount will be awarded as costs.

Accordingly, it is hereby

ORDERED that counsel for Plaintiff, David T. Lopez, is awarded the amount of $76,428.33 as his attorney's fee, including post judgment interest at the rate of 4.14%, and costs in the amount of $10,104.25.

SIGNED at Houston, Texas, this 18th day of October, 2005.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE